IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HARBOR ESTATES LLC <u>et. al</u>      :
                                     :
v.                                   :   Civil No. WMN-05-2033
                                     :
EDWARD V. GIANNASCA <u>et. al</u>    :

<b><u>MEMORANDUM</u></b>

Before the Court is Plaintiffs' motion to strike and/or to dismiss the amended complaint.  Paper No. 40.[1]  The motion is fully briefed.  Upon a review of the pleadings and the applicable case law the Court determines that no hearing is necessary and that the motion will be granted in part and denied in part.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

This suit arises out of efforts to develop a luxury residential project on Baltimore's waterfront (the Baltimore Project or simply, the Project).[2]  Plaintiffs are the current developers of the Project and, until July 11, 2005, when he was terminated from the position, Defendant Edward Giannasca was the manager for the Project.  The gravamen of Plaintiffs' Amended

---

[1] There is also pending a motion to dismiss for lack of personal jurisdiction filed by several Defendants.  That motion is not yet fully briefed and will be addressed in a separate opinion once it is ripe.

[2] The Court presented much of the factual background for this action in a memorandum opinion issued a few months ago in ruling on Defendants' counterclaim.  <u>See</u>, Paper No. 33.  As Plaintiffs observe, however, as that memorandum ruled on Plaintiffs' motion to dismiss the Defendants' counterclaim, the Court accepted as true the allegations of the counterclaim and drew all inferences in Defendants' favor.  In this opinion, the Court must accept Plaintiffs' allegations as true.

Complaint is that while Giannasca was contractually obligated to devote his "full-time efforts" to the construction of the Project and the sale of its units, instead, he was diverting much of his time and energy (along with the resources of the Plaintiffs) to the development of a similar residential project in New Orleans, Louisiana (the New Orleans Project).  On the basis of this conduct, Plaintiffs have asserted a variety of claims against Giannasca and various entities associated with Giannasca.  The claims and remedies at issue in the instant motion are the following:

> Count IV - Imposition of Constructive Trust against all Defendants;
>
> Count VI - Breach of Duty of Loyalty against Giannasca; and
>
> Count VII - Relief under Lanham Act, 15 U.S.C. § 1125 against all Defendants.[3]

In addition to challenging these specific claims, Defendants have requested that the Court strike from the Amended Complaint any reference to documents that Defendants claim Plaintiffs misappropriated from a computer alleged to belong to Giannasca.

**II. MOTION TO STRIKE**

---

[3] In their motion, Defendants also raise challenges to Count I - Breach of Contract against Giannasca, and Count VIII – relief under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4) against all Defendants.  In their opposition, Plaintiffs acknowledge that, because Giannasca was not a party to the contract at issue in Count I, he is not a proper defendant in Count I.  Opp'n 9.  In their reply memorandum, Defendants acknowledge that the Amended Complaint has stated a cause of action under 18 U.S.C. § 1030(a)(4).  Accordingly, the motion to dismiss will be granted as to Count I but denied as to Count VIII.

The motion to strike relates specifically to an incident that occurred on June 30, 2005.  On that date, while Giannasca was out of town, Plaintiff Jack Cayre entered Giannasca's office and accessed certain documents on Giannasca's computer. Defendants claim that this computer belonged personally to Giannasca, and that the documents that were accessed were personal, password-protected documents unrelated to the Baltimore Project.  In addition to the argument that these documents and allegations based upon these documents should be stricken as "fruit of a poisoned tree," Mot. 6, Defendants complain that some of the documents submitted as exhibits involve privileged communications with attorneys.

Plaintiffs allege in the Amended Complaint, however, that the computer belonged not to Giannasca, but to Plaintiffs, and that it was kept and maintained in the office in which Giannasca worked as an employee of Plaintiff Midtown Baltimore LLC.  Thus, it seems that there is at least a question as to whether accessing documents on their own computer would constitute misappropriation.  Furthermore, if, as Plaintiffs claim, the computer belonged to Plaintiffs, whatever privilege might have attached to correspondence to or from attorneys stored on that computer is likely to have been waived.

Given the conflicting accounts regarding the ownership of the computer, the Court cannot resolve the motion to strike at this stage in the proceedings.  Thus, the motion will be denied.

**III. MOTION TO DISMISS**

...

A. Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  In considering such a motion, the court is required to accept as true all well-pled allegations in the Complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff.  See Ibarra v. United States, 120 F.3d 472, 473 (4th Cir. 1997).  "To survive a motion to dismiss, Plaintiffs must have alleged facts that show that they are entitled to relief on their substantive causes of action."  In re Criimi Mae, Inc. Securities Litigation, 94 F. Supp. 2d 652, 656 (D. Md. 2000).

B. Breach of Duty of Loyalty

Defendants argued in their motion that Giannasca is entitled to judgment on the breach of contract claim (Count I) as well as the breach of duty of loyalty claim (Count VI) on the ground that Giannasca, individually, was not a party to the Operating Agreement that established Harbor Estates LLC, the entity created to develop the Baltimore Project.  While Giannasca executed the Operating Agreement, it was on behalf of Giannasca Baltimore LLC, a Maryland LLC of which Giannasca is a member. As noted above, see 2 n.3, Plaintiffs conceded in their opposition that Giannasca

4

is not a proper defendant in the claim for breach of the Operating Agreement.

Plaintiffs argue, however, that Giannasca's status as an employee of one of the defendants, Midtown Baltimore LLC (Midtown), created a duty of loyalty. It is well established that the employment relationship encompasses a duty of loyalty. "Certain basic terms are legally implied <u>in all employment contracts</u>, and unless expressed to the contrary, they <u>form a part of the contract</u> as a matter of law. These terms, such as the duty of loyalty, are so deeply rooted in the common law of master and servant relationship that they are essential to the relationship and implicitly become part thereof." <u>Birch v. Pepsi Bottling Group, Inc.</u>, 207 F.Supp.2d 376, 387 (D. Md. 2002) (emphasis in original).

Defendants do not dispute that Giannasca was an employee of Midtown and concede that, if he was an employee, "he may have owed a duty of loyalty to Midtown." Reply 2-3. Defendants take issue, however, with the appropriate scope of that duty. They contend that, even if Giannasca had committed to the "ill-defined provision" that he would devote his "full time efforts" to the Baltimore Project, such a commitment would not be at odds with his ability to pursue outside business interests, like the New Orleans Project. <u>Id.</u> Furthermore, and most significantly, they note that there is no allegation that the New Orleans Project was competing with the Baltimore Project.

The Court must agree that Plaintiffs' breach of the duty of

5

loyalty claim is tenuous, at least as that duty has been defined by Maryland courts. A finding that an employee has breached the duty of loyalty typically involves some element of competition with his or her employer. For example, the Maryland Court of Appeals has observed that "conduct may rise to the level of a breach of an employee's fiduciary duty of loyalty . . . where an employee has committed some fraudulent, unfair, or wrongful act in the course of preparing <u>to compete</u> in the future." <u>Maryland Metals, Inc. v. Metzner</u>, 382 A.2d 564 (Md. 1978) (emphasis added); <u>see also</u>, <u>Ritterpusch v. Lithographic Plate</u>, 119 A.2d 392, 397 (Md. 1956) (solicitation of employer's customers prior to cessation of employment is breach of duty of loyalty). This Court notes that the holdings of each of the cases upon which Plaintiffs rely are premised upon some element of competition. <u>See</u> <u>Wilson v. McGrow, Pridgeon & Co., P.A.</u>, 467 A.2d 1025, 1026 (Md. 1983) (action alleging breach of loyalty arising from the manner in which accountant had prepared for his departure from one accounting firm and for entry into business with a new accounting firm);[4] <u>Maryland Metals</u>, (see <u>supra)</u>; <u>Space Aero Prod. Co. v. R.E. Darling Co.</u>, 208 A.2d 74, 78 (Md. 1965) (involving allegations that employees violated their duty of loyalty and trust in using trade secrets in setting up a company to go into competition with employer); <u>BEP, Inc. v. Atkinson</u>, 174 F. Supp.

---

[4] This decision actually addresses the arbitrability of the breach of duty claims and simply declares, in passing, that "the relationship of employer and employee gives rise to a duty of loyalty." 467 A.2d at 1031.

2d 400, 405 (D. Md. 2001) (holding employee's pattern of conduct to divert the business of his employer's largest customer to himself and his corporation was breach of duty of loyalty). Here, as Defendants correctly note, there is no allegation that the New Orleans Project is competing against the Baltimore Project in that potential investors or purchasers were being lured from one project to the other.

Plaintiffs, however, do aver elsewhere in their Amended Complaint that Defendants "usurped . . . Plaintiffs' corporate opportunity." Am. Comp. ¶ 80. This allegation, if factually supported, could establish a claim for breach of the duty of loyalty. Under the "corporate opportunity" doctrine, an offshoot of the general duty of loyalty owed by corporate officers and upper-level management employees, "corporate personnel are precluded from diverting unto themselves opportunities which in fairness ought to belong to the corporation." Maryland Metals, 382 A.2d at 572. The Court notes that it is not clear from the Amended Complaint that there is a claim that the New Orleans Project was an opportunity that Plaintiffs would have undertaken had it been presented to them. Furthermore, it is not readily apparent from whence would come the obligation on the part of Giannasca to present this unrelated opportunity to Plaintiffs. Nonetheles, the Court finds that by alleging that Defendants usurped their corporate opportunity, Plaintiffs' have stated a cause of action for breach of the duty of loyalty, albeit a

tenuous one.

The Court also notes that, even should Plaintiffs fail to establish a breach of the duty of loyalty claim, there are other implied duties attendant to the employee/employer relationship, the breach of which are more fully supported by the allegations in the Amended Complaint.  As this Court has previously observed, "[o]ther such implied duties include the employee's implied duty to refrain from insolent, offensive or threatening words or behavior, the employee's implied duty to exercise skill in performing duties, the employee's implied duty to protect an employer's trade secrets, [and the] employee's implied duty to regularly report for work. . . ."  Birch, 207 F.Supp.2d at 387 (citing Stanley Mazaroff, Maryland Employment Law § 3.01[2][a]-[b], at 133-45 (2d 2001)).  Although Plaintiffs may have captioned Count VI as a claim for breach of the duty of loyalty, the scope of the actual claim is broader.  They allege that Giannasca "owed an allegiance, and fiduciary obligation to act in good faith, conduct [him]self appropriately and engage in activities which were in the best interests of Harbor Estates and its members."  Am. Compl. ¶ 92.  They further allege that Giannasca breached his fiduciary duties to Midtown by "covertly diverting time, resources and attention to the New Orleans Project."  Id. ¶ 94.  Under the liberal notice pleadings of the Federal Rules, the Court finds Plaintiffs' allegations sufficient to state a claim for breach of the fiduciary duty to exercise care and ordinary skill in performing his employment obligations,

8

even should the breach of duty of loyalty claim prove unavailing. See Planmatics, Inc. v. Showers, 137 F. Supp. 2d 616, 625-627 (D. Md. 2001) (expanding what defendant argued should be limited to a breach of duty of loyalty claim to include a claim for breach of duty to exercise ordinary skill as well).

### C. Relief Under the Lanham Act

Section 43(a) of the Lanham Act imposes liability upon:

> [a]ny person who, or in connection with any goods or services . . . uses in commerce any word, term [or] name . . . or any false designation of origin . . . which is likely to cause confusion, or cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1)(A). The Act also imposes liability upon those who:

> in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

Id. § 1125(a)(1)(B). Liability under both subsections runs to "any person who believes that he or she is or is likely to be damaged by such act." Id.

In the Lanham Act Count, Plaintiffs assert two different types of claims that stand as mirror images of one another. In one set of claims, Plaintiffs allege that Defendants are claiming, as their own, products and services that were actually produced by Plaintiffs. Specifically, Plaintiffs allege that, at least as of the time that the Amended Complaint was filed,

9

Defendants were misrepresenting that they continued to be involved in the development of the Baltimore Project. Am. Compl. ¶ 97. These misrepresentations included listing the Baltimore Project on Defendants' website and displaying images of the Baltimore Project on a large screen monitor placed in the window of Defendants' office (which is located next door to Plaintiffs' Baltimore Project office). Id. ¶ 46. Plaintiffs also allege that Defendants misappropriated Plaintiffs' floor plans, designs, and promotional material from the Baltimore Project and used them in advancing the New Orleans Project without crediting Plaintiffs as the source of those designs and materials, thus, making a false representation as to origin.

As the second type of claim, Plaintiffs allege that Defendants misrepresented Plaintiffs' role in the New Orleans Project. Am. Compl. ¶¶ 98. Plaintiffs contend that Defendants "falsely represented that the new Orleans Project has a relationship with the [Baltimore] Project and Plaintiffs." Id. ¶ 36. Plaintiffs assert that, even though Plaintiffs were completely uninvolved in the New Orleans Project, Defendants "opportunistically leveraged and parlayed Plaintiffs' reputation in developing the New Orleans Project." Id.

Although somewhat atypical, Plaintiffs' claims fit within the scope of Lanham Act "passing off" and "reverse passing off" claims. As the Supreme Court has explained, "[p]assing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's.

10

'Reverse passing off,' as its name implies, is the opposite: The producer misrepresents someone else's goods or services as his own." Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 28 n.1 (2003).[5]  Plaintiffs' assertion that Defendants misrepresented that Defendants were the developers of the Baltimore Project and the source of the designs and plans used to market the New Orleans Project states a claim for reverse passing off.  The alleged harm in a reverse passing off claim is that the plaintiffs are "'involuntarily deprived of the advertising value of [their] name and of the good will that otherwise would stem from public knowledge of the true source of the satisfactory product.'"  Opp. 13 (quoting Smith v. Montoro, 648 F.2d 602, 607 (9th Cir. 1981)).  Allegations that Defendants attached Plaintiffs' name (and with it Plaintiffs' reputation) to the New Orleans Project could constitute a passing off claim.  The alleged damage associated with this claim appears to be that Plaintiffs' reputation will be tarnished by consumers' erroneous

---

[5] To prevail on a passing off claim, a plaintiff must show that (1) the defendant used in connection with goods or services a false designation of origin or false description or representation; (2) the defendant caused such goods and services to enter into commerce; and (3) the plaintiff is a person who believes that he or she is likely to be damaged as a result thereof. Web Printing Controls Co., Inc. v. Oxy-Dry Corp., 906 F.2d 1202, 1204 (7th Cir. 1990)

A successful claim for ""reverse passing off"" under the Lanham Act requires that the plaintiff prove (1) that the work at issue originated with the plaintiff; (2) that the origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin. Lipton v. Nature Co., 71 F.3d 464, 473 (2nd Cir. 1995).

11

association of Plaintiffs with the New Orleans Project.  See Opp. 17 n.11.

Defendants raise two main challenges to Plaintiffs' Lanham Act claims.  First, just as they did in challenging the breach of the duty of loyalty claim, Defendants argue that Plaintiffs and Defendants are not in competition with one another.  Reply 6 ("the principle defect in Midtown's Lanham Act claim is that the Plaintiffs and the Defendants are not competing with one another, and they never have").  While the typical Lanham Act defendant is a competitor of the plaintiff, courts have expanded the scope of the Act to permit claims where the parties are not competitors, particularly for false origin or association claims.  See, e.g., Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1110 (9th Cir. 1992) (standing to bring a Lanham Act claim "does not require 'actual competition' in the traditional sense; it extends to a purported endorser who has an economic interest akin to that of a trademark holder in controlling the commercial exploitation of his or her identity"); Smith v. Montoro, 648 F.2d at 608 ("the dispositive question as to a party's standing to maintain an action under section 43(a) is whether the party has a reasonable interest to be protected against false advertising.") (citations and internal quotations omitted).

Second, Defendants argue that Plaintiffs cannot establish a likelihood of confusion.  In making that argument, however, Defendants distort what the object of consumer confusion must be. Defendants argue that, "[u]nder no legal theory would a consumer

mistakenly purchase a condominium in New Orleans when he or she really wanted to purchase a condominium near the Inner Harbor of Baltimore."  Reply 6.  Obviously not, but that is not the confusion that Plaintiffs are alleging.  Plaintiffs allege that consumers will be confused as to who is the developer behind each of the projects.

While the Court finds that Plaintiffs have stated a claim under the Lanham Act and will allow them to proceed with this claim into the next stage of this litigation, the Court also recognizes that Plaintiffs are not likely to prevail on this claim and establish recoverable damages.  Under their theory of damages, Plaintiffs must establish that the relative reputations of Plaintiffs or Defendants as developers are such that consumers' decisions would be influenced by Plaintiffs' or Defendants' involvement or non-involvement in a particular project.  To support that theory with admissible evidence would appear problematic.  But again, at this stage in the litigation, Plaintiffs' allegations are sufficient.  See Penn-Plax, Inc. v. L. Schultz, Inc., 988 F. Supp. 906, 908-09 (D. Md. 1997) (noting that "although [the plaintiff] may eventually have to prove more to establish a damages amount, its allegations [of literally false representations], taken as true as they must be on a motion to dismiss, suffice to state a claim upon which both damages and injunctive relief may be granted").

### D. Imposition of a Constructive Trust

In the count seeking the imposition of a constructive trust,

13

Plaintiffs assert that Defendants usurped Plaintiffs' corporate opportunity, resources, and assets by diverting their time, energy, attention and Plaintiffs' resources to the New Orleans Project.  Am. Compl. ¶ 80.  On that basis, they allege that they acquired an ownership interest in the New Orleans Project.  Id. ¶ 81.  Specifically, Plaintiffs ask for an order conveying to them "a proportionate ownership interest in the New Orleans Project, measured by the reasonable value" of Defendants' usurpation of Plaintiffs' corporate opportunity, resources and assets.  Am. Compl., Count IV's Prayer for Relief (B).

Under Maryland law, a "constructive trust is the remedy employed by a court of equity to convert the holder of the legal title to property into a trustee for one who in good conscience should reap the benefits of the possession of said property." Wimmer v. Wimmer, 414 A.2d 1254, 1258 (Md. 1980).  The usurpation of a corporate opportunity by a fiduciary is one of the more common circumstances where courts find the imposition of a constructive trust appropriate.  See Edwards v. Gramling Engineering Corp., 588 A.2d 793, 801 (Md. 1991) ("[T]he traditional remedy imposed by courts upon a finding of a misappropriation of corporate opportunity is the impression of a constructive trust in favor of the corporation upon the property."); Leavy v. American Federal Sav. Bank, 764 A.2d 366, 372 (Md. App. 2000) ("Where a fiduciary in violation of his duty to the beneficiary receives . . . a profit, he holds what he receives upon a constructive trust for the beneficiary.")

14

While, as noted above, the Court has serious reservations as to whether Plaintiffs will be able to establish that the New Orleans Project was a corporate opportunity to which they were somehow entitled, the Court cannot conclude that it is "beyond doubt" that they can prove no set of facts in support of this claim for relief.  Conley, 355 U.S. at 45-46.  Accordingly, the Court must deny the motion as to Count IV as well.

## IV. CONCLUSION

For the above-stated reasons, the Court will deny Defendants' motion to strike and will deny the motion to dismiss as to all but Count I (as to Defendant Edward Giannasca).  A separate order consistent with this memorandum will issue.

/s/
_____
William M. Nickerson
Senior United States District Judge

Dated: May 18, 2006